L. LYNNETTE SARNO
SEYFARTH SHAW LLP
1270 Avenue of the Americas
Suite 2500
New York, New York 10020-1801
(212) 218-5500

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE T. HAYES, JR.,

                Plaintiff,

    v.

THE INTERPUBLIC GROUP OF COMPANIES,
INC., MCCANN-ERICKSON USA, INC. and DOE
CORPORATIONS 1-5,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SEYFARTH COPY



JUDGE STEIN

Civil Action No. [TBD] 06 CV 4415

**NOTICE OF REMOVAL**

RECEIVED
JUN 1 2 2006
U.S.D.C. S.D. N.Y.
CASHIERS

Defendants The Interpublic Group of Companies, Inc. ("Interpublic") and McCann-Erickson USA, Inc. ("McCann-Erickson") (collectively, "defendants"), by and through their attorneys, Seyfarth Shaw LLP, and pursuant to 28 U.S.C. §§ 1331 and 1441, file this Notice of Removal with respect to the case identified as George T. Hayes, Jr. vs. The Interpublic Group Of Companies, Inc., McCann-Erickson USA, Inc. and Doe Corporations 1-5, Index No. 06105988, from the Supreme Court of the State of New York, County of New York. In support of this Notice, defendants state as follows:

**Timeliness of Removal**

1.    Upon information and belief, on or about May 2, 2006, plaintiff George T. Hayes, Jr. ("Hayes") filed a Verified Complaint with the Clerk of the Supreme Court of the State of New

York, County of New York. (A true and correct copy of the Summons and Verified Complaint is annexed hereto as Exhibit A). Defendants were served with the Verified Complaint, by service through the New York Secretary of State, on May 12, 2006.

2.    The Verified Complaint also identifies as defendant "Doe Corporations". Upon information and belief, no one designated with such fictitious name has been served.

3.    This Notice of Removal is timely served pursuant to 28 U.S.C. § 1446(b), having been filed within thirty (30) days after defendants' initial receipt of the Verified Complaint, which is the "pleading . . . from which it may first be ascertained that the case is one which is . . . removable."

**Basis for Removal**

4.    The ground for removal is diversity of citizenship under 28 U.S.C. § 1332, in that, upon information and belief and according to the Complaint:

      (a) plaintiff Hayes is a citizen of the State of New Jersey, with a place of residence located at 172 Christopher Street, Montclair, NJ 07042; and

      (b) defendants are both citizens of the States of Delaware and New York, in that they are corporations existing under the laws of the State of Delaware and have their principal places of business in the State of New York.

Accordingly, this action is one in which none of the parties in interest properly joined and served as a defendant is a citizen of the state in which plaintiff resides.

5.    Additionally, according to the Complaint, the amount in controversy herein is $30 million, and therefore in excess of $75,000.00, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

6.    Defendants will file a copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of New York, at the Courthouse located at 60

Centre Street, New York, NY 10007, to effect removal of this action to this Court pursuant to 28
U.S.C. § 1446(d).

    7.    Defendants reserve all defenses.

WHEREFORE, Defendants pray that the above-referenced civil action proceed in the
United States District Court for the Southern District of New York as an action properly
removed hereto.

Dated: New York, New York
       June 12, 2006

                Respectfully submitted,

                SEYFARTH SHAW LLP

                By _____
                   Dov Kesselman
                   L. Lynnette Sarno
                1270 Avenue of the Americas, Suite 2500
                New York, New York 10020-1801
                (212) 218-5500

                Attorneys for Defendants The Interpublic Group of
                Companies, Inc. and McCann-Erickson USA, Inc.

TO:    Murray Schwartz, Esq.
       Schwartz & Perry LLP
       295 Madison Avenue
       New York, NY 10017
       Attorneys for Plaintiff

NY1 26421550.1

SCANNED ON 5/2/2006

B199— Summons without notice, Supreme Court, personal or substituted service. 12 pt. type, 4-94

©1993 Blumberg Excelsior, Inc., Publisher, NYC 10013
www.blumberg.com

## Supreme Court of the State of New York
### County of   NEW YORK

GEORGE T. HAYES, JR.,

                                          *Plaintiff(s)*

against

THE INTERPUBLIC GROUP OF COMPANIES, INC.,
MCCANN-ERICKSON USA, INC. and
DOE CORPORATIONS 1-5,

                                          *Defendant(s)*

Index No.
Date purchased 0 6 1 0 5 9 8 8

Plaintiff(s) designate(s)
    NEW YORK
County as the place of trial.

The basis of the venue is
Defendants' principal
places of business

## Summons

Plaintiff(s) reside(s) at

County of

**FILED**

MAY 02 2006

NEW YORK
COUNTY CLERKS C...

To the above named Defendant(s)

        **You are hereby summoned** to answer the complaint in this action and to serve a copy of
your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's
Attorney(s) within   20   days after the service of this summons, exclusive of the day of service (or within 30
days after the service is complete if this summons is not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

Dated,  May 1, 2006

Defendant's address:

THE INTERPUBLIC GROUP OF COMPANIES, INC.
1114 Avenue of the Americas, 18th Floor
New York, New York 10036

MCCANN-ERICKSON USA, INC.
1114 Avenue of the Americas, 18th Floor
New York , New York 10036

Attorney(s) for Plaintiff
Schwartz & Perry LLP
Office and Post Office Address
295 Madison Avenue
New York, New York 10017
(212) 889-6565

CITY N.Y. LAW DEPART.
OFFICE OF CORP. COUNSEL
COMMUNICATIONS SECTION
2006 MAY 12 PM 12 02

2006 MAY -2 A 11: 33

LAW & ADJUSTMENT BUREAU
OF THE NYC
NYC COMMISSION

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X

GEORGE T. HAYES, JR.,

          *Plaintiff,*

   -against-

THE INTERPUBLIC GROUP OF COMPANIES, INC.,
MCCANN–ERICKSON USA, INC. and
DOE CORPORATIONS 1-5,

          *Defendants.*

------------------------------------------------------------X

**Index No.:**

**VERIFIED COMPLAINT**

06105988

FILED

MAY 02 2006

NEW YORK
COUNTY CLERK'S CO

    Plaintiff, as and for his Verified Complaint, all upon information and belief, respectfully alleges as follows:

### IDENTITY OF PARTIES

1.    Plaintiff George T. Hayes, Jr. ("Hayes") was employed by The Interpublic Group of Companies, Inc. or one of its subsidiaries or affiliated entities for 30 years, from September 1, 1975 until he was unlawfully terminated on February 9, 2006.

2.    Defendant The Interpublic Group of Companies, Inc. ("Interpublic") is a corporation duly organized and existing under the laws of Delaware and is licensed to and maintains its principal executive office in the County, City and State of New York.

3.    Defendant McCann–Erickson USA, Inc. ("McCann–Erickson") is a corporation duly organized and existing under the laws of Delaware and is licensed to and maintains its principal executive office in the County, City and State of New York.

4.    McCann–Erickson is a subsidiary of, or a company affiliated with, The Interpublic Group of Companies, Inc.

5.    Hayes was employed by both McCann–Erickson USA, Inc. and/or The Interpublic Group of Companies, Inc. and both Defendants are collectively referred to herein as "McCann– Erickson."

6.    McCann-Erickson is a worldwide advertising firm and its principal place of business is located in the County, City and State of New York, at which facility Hayes rendered some of the services he provided during his 30 years of employment, including at the time of his termination.

7.    Universal McCann is the global media specialist division of McCann-Erickson and it is through the Universal McCann division that Hayes generally rendered his services.

8.    Defendants Doe Corporations 1-5 are sued herein under fictitious names for the reason that, after diligent and faithful efforts to ascertain their names and identities through review of corporate filings, their true names and identities are presently unknown to Hayes except that they were connected in some manner with McCann–Erickson and/or were individuals, corporations, business entities, partnerships, agents, services, representatives, co-venturers, associates, companies or other entities who engaged in the activities alleged herein and/or were in some manner responsible for the damages inflicted to Hayes and/or were, in some

2

manner, related to McCann–Erickson and Hayes prays for leave to insert herein their true names, identities, capacities, activities and/or responsibilities when the same are ascertained.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

9.     In September 1975, Hayes commenced his employment as a Media Planner with McCann–Erickson in the County, City and State of New York, where he would remain employed for the next thirty (30) years.

10.     From 1975, when Hayes commenced his employment with McCann–Erickson, until his termination 30 years later, Hayes' value to McCann–Erickson was recognized and confirmed by the promotions, salary increases, bonuses and the increased duties and responsibilities assigned to him.

11.     Given his demonstrated capabilities, Hayes was repeatedly promoted during his employment, from Supervisor, to Vice President, to Executive Vice President, and Hayes was given increasing responsibilities, including managing several areas within the company.

12.     During his career with McCann–Erickson, spanning three decades, Hayes also earned a reputation as an effective executive, which was repeatedly reconfirmed to Hayes by McCann–Erickson, who would often call upon Hayes to handle assignments of considerable significance.

13.     Hayes' achievements at McCann–Erickson earned him honors and awards, including the H.K.McCann Award, for outstanding leadership in media and management, and the department Hayes supervised was presented with the McCann Creativity in Media Award, for the most creative media plan worldwide.

14.     Hayes was not only recognized within McCann–Erickson, but was acknowledged by the advertising community, as well, and was named an Advertising Age "Media Maven," which, given Hayes's long-standing ties to McCann–Erickson, also brought acclaim to McCann–Erickson.

15.     Between 2001 and 2004, as further confirmation of Hayes's positive performance, Hayes was named Executive Vice President, Director of Client Services North America and in that capacity, Hayes established and managed two media planning and buying operations, valued at $800 million and $300 million respectively, directed the 135 person McCann–Erickson New York Media Planning Group and was a highly respected member of the Universal McCann Global Executive Committee.

16.     Hayes, given his stellar reputation in the advertising industry and his ability to positively interact with clients, was specifically included on various pitches to clients for new business, due to his stellar reputation and also served as a "problem solver" for Universal McCann during this period and was routinely brought in to respond to issues raised by clients of Universal McCann.

17.     Hayes was also asked and agreed to assist the company's offices in Latin America by seeking out a permanent Regional Director and, until such an individual was found, assist a young man in his 30's who was new to the company to perform those duties, although Hayes was advised that this young man was not going to be considered for the position of Regional Director.

18.     Although Hayes was qualified to fill the position of Regional Director for Latin America, the company desired to keep Hayes in his position in New York and believed that he could, nevertheless, assist the Latin America operations through his position in New York.

19.     In October 2005, Nick Brien ("Brien") was appointed the new President of Universal McCann, the division in which Hayes worked.

20.     At the time of Brien's appointment, Hayes was 53 years of age.

21.     Almost immediately following his arrival, Brien made it clear that he valued youth instead of experience and desired younger persons in place of older persons and acted upon his discriminatory preference by terminating older persons, because of their age.

22.     Within a few days of his arrival, Brien addressed the McCann–Erickson employees in the New York office and stated that the young people in the group "got it" when it came to "new media" of the digital age, that "things will be different around here" and said that it was not going to matter that someone had been with the company a long time, necessarily

5

implying that age and experience were viewed as a hindrance, rather than as a benefit and that "young" was valued in place of age.

23.    Brien's conduct also confirmed that his decisions were based on his perception that young people could perform more effectively in the advertising industry than older persons.

24.    Based on the policy of age discrimination that Brien brought to McCann–Erickson, many experienced and highly regarded persons of age were terminated soon after Brien assumed his role as President of Universal McCann.

25.    To replace these persons of age from the company, McCann–Erickson hired new individuals, or promoted younger employees, to fill roles in the company, all of whom were younger than Hayes and fit Brien's discriminatory perception that younger persons could perform more effectively in the advertising industry than Hayes, regardless of demonstrated abilities, experience and recognized achievements.

26.    The younger employees who replaced the senior persons had far less experience and qualifications, but aligned with Brien's discriminatory focus on youth, creating an inference that the real reason the older employees were being terminated and replaced by younger employees was their age.

27.    The ultimate goal of McCann–Erickson was to replace its older workers with younger employees, based not on performance, but on McCann–Erickson's discriminatory desire

6

to create a more youthful image, which McCann–Erickson felt it could achieve by ridding itself of its older employees and replacing them with younger employees.

28.   Brien could not have terminated all the persons of age without clearly demonstrating a discriminatory bias, so, instead, Brien excluded and isolated certain employees of age from key decisions on the future of the company and hindered those older employees from meeting with clients.

29.   This was done with the intended result of creating a basis to attack their performance, their abilities to function, or their suitability to continue to serve, although they had been employed by the company for substantial periods of time, or to cause some to leave McCann-Erickson.

30.   Only by way of example, on November 18, 2005, Brien, shortly after becoming President, conducted a meeting to discuss the future of Universal McCann and the business strategies the company would employ under his control and, although senior executives from all over the world were invited to this meeting, certain key executives of age, including Hayes, were not invited to this meeting, although they reasonably should have been invited to attend, given their status within the company.

31.   The decision of Brien to exclude Hayes from this significant meeting, almost immediately after Brien took over operating control, and with little or no contact between Brien

7

and Hayes, and no reasonable basis upon which to evaluate his performance, raised a significant issue as to the reason that Hayes was not invited to attend this meeting and instead was excluded.

32.    Hayes believes that this exclusion and subsequent conduct demonstrated that Hayes, then 53 years old, was being evaluated based on his age and nothing else.

33.    Brien could not have based any decisions regarding Hayes' employment on Hayes' performance, or personal knowledge of Hayes, or Hayes' performance before he was terminated, because Brien's contact with Hayes was limited to only one meeting at which they were both present, involving approximately 12 attendees, during which the contact between Brien and Hayes was limited and general in nature.

34.    Hayes, after Brien became President, was removed from certain assignments that he reasonably should have been involved with and had been asked to work on before Brien's appointment as President.

35.    Although Hayes had been requested by the previous acting chief executive to provide assistance on a particular account, with whom Hayes had previously not worked, after the client had complained about how it was being mishandled by others, Brien, who had never worked with Hayes, did not permit Hayes to correct any of the deficiencies, even though Hayes had successfully done so before, with other clients.

8

36.     Hayes was also told that he should no longer provide assistance to the younger, inexperienced man in his 30's working in Latin America and that although the company, just months earlier, believed that this younger employee was too inexperienced to head the position of Regional Director of Latin America, the company, almost immediately after Nick Brien arrived, now felt that this young and inexperienced individual, who had received no significant additional training, was now suddenly qualified and need not be trained by a more experienced person.

37.     At the same time that McCann–Erickson was terminating many long-time employees of age, with demonstrated track records of ability, it was also promoting one of the company's new "Strategic Imperatives" to "attract and keep our talent," which clearly applied only to younger employees who were now able to be elevated to the higher positions that had been held by the older employees, who had now been terminated.

38.     In fact, many of the positions created for or given to younger employees could have been filled by Hayes, who, given his 30 years of experience with the company, his achievements and experience was certainly qualified for these roles.

39.     McCann–Erickson also began to favor younger employees, even when their performance did not warrant such treatment, confirming that age was a greater motiving factor in McCann-Erickson's employment decisions, when, only by way of example, McCann–Erickson found a position for a man in his 30's, even though this individual had lost an account, and when

9

an older employee's performance would have been viewed as deficient if that, or similar conduct, occurred.

40.    During this period, and despite McCann–Erickson's discriminatory effort to purge the company of its older employees, Hayes continued to effectively perform for McCann–Erickson, as he had done for 30 years, and Hayes was still recognized as a problem-solver and was still requested to participate in difficult situations.

41.    On December 13, 2005, after 30 years of continuous employment by the same company, Hayes was advised that he was being terminated, effective February 9, 2006.

42.    Hayes was initially advised that the reason for his termination was that Hayes did not have the "skill set" needed to remain employed by McCann-Erickson.

43.    The contention that the broad and significant experience of Hayes, his effective performance and recognized achievement for 30 years and his role as a problem solver would suddenly not be the skills needed to assist McCann–Erickson was so clearly a concocted pretext designed to mask McCann–Erickson's discriminatory decision to fire Hayes because of his age that it reasonably raises a genuine inference that the real reason Hayes was fired was because of his age.

44.    In fact, McCann–Erickson actually continued to employ Hayes for two additional months after his termination, taking advantage of his "skill set" so that he could continue to

resolve significant existing issues with a certain former client, which Hayes completed to the satisfaction of McCann–Erickson, as he had done for 30 years.

45.    Clearly, McCann–Erickson would not have continued to request Hayes to represent McCann–Erickson in collecting payment of significant monies due from a client after it had terminated Hayes, unless it had confidence in Hayes' abilities, skill set and professionalism.

46.    The fact is, at various times during Hayes' long period of employment at McCann–Erickson, Hayes worked with highly valued clients of McCann–Erickson, including Sony, Nestle, Wendy's and Lowe's, which would not have occurred had Hayes' performance not been satisfactory, because to do so would have violated McCann–Erickson's obligation to its clients.

47.    When this pretext for Hayes' termination was questioned, McCann–Erickson, months after the termination of Hayes, attempted to justify its pretext by resurrecting incidents or events that had occurred long before Brien was even associated with McCann–Erickson and which played no role in the evaluation of the performance of Hayes, and these incidents were raised solely to unsuitably manufacture and lamely mold an excuse for the termination of Hayes on those baseless, stale and by then irrelevant events.

11

48.   Actually, McCann–Erickson's request for Hayes to continue to perform vital and delicate services with respect to its clients took place after the incidents and events occurred, which McCann–Erickson attempted to use as a pretext for age discrimination.

49.   In fact, after the events occurred, which McCann–Erickson unsuitably relied upon to manufacture a pretext for Hayes' termination, McCann–Erickson granted Hayes a promotion and awarded him bonuses, all of which undermine the efforts of McCann–Erickson to cover up the genuine reason for the termination of Hayes, namely his age.

50.   Given the circumstances surrounding Hayes' termination from McCann–Erickson, including, among other things, and only by way of example: (a) the exodus of older employees, who were replaced by younger individuals, (b) Brien's clear discriminatory animus towards persons of age, as reflected by, among other things, his comments that only young people "get" advertising in the age of new media, (c) that Hayes was fired just two months after Brien became the President of Universal McCann after 30 years of employment, along with other persons of age, and (d) the pretext that the company had no use for Hayes' "skill set," when there were many positions open for which Hayes was more than qualified or Hayes could have remained in his status as a problem solver, together with other conduct, reasonably creates a strong inference that McCann–Erickson's true basis for terminating Hayes was based on his age.

51.   As a result of McCann–Erickson's discriminatory actions, some of which are set forth above, only as examples, Hayes has suffered emotional distress, anxiety, and emotional

trauma, all of which have negatively impacted his health and well-being and has caused him to seek the care of a doctor, under whose care he presently remains.

52.    As a result of the discriminatory and retaliatory conduct of McCann–Erickson, referred to herein, Hayes, among other things and only by way of example, has been caused to suffer a reduced lifetime earning capacity; the burden of now being a displaced worker who can reasonably expect to earn less because of his discharge; the reality of facing a job market where he will receive less favorable salary terms than his former job because of the absence of longevity; the handicap forced upon him by a loss of tenure and opportunity to secure remuneration, based on previous experience that would otherwise have been available if he had not been discharged; the profound and lasting stigma of dismissal; the loss of benefits, the risk of ill-health that is causally related to Hayes' loss of employment; the grief, depression and emotional trauma Hayes has already and will continue to sustain because of his dismissal; the loss Hayes has and will continue to sustain because of his strained financial resources, the costs involved in the job search; and the income Hayes will continue to lose in the future because he may now be required to accept a position on less favorable terms because of his age.

53.    The irreversible damage inflicted upon Hayes as a direct and proximate result of McCann–Erickson's unlawful discrimination, based on Hayes' age, diminished his reputation in the field that he has spent over thirty years building, has and will cause an irreparable loss of income for the remainder of Hayes' working life, has caused emotional injuries and has severely impacted upon the quality of his life.

13

54.     McCann–Erickson used the entire work life of Hayes to have Hayes participate in the activities of McCann–Erickson, its related and parent company, all of which benefitted McCann–Erickson, and then disposed of Hayes when he reached the age of 53, after 30 years of devoted and dedicated work, the caliber of which earned Hayes recognition and achievements, and this amounts to egregious conduct, unlawful and repugnant to acceptable business practice, because it was based upon the groundless and reprehensible belief that people of age, in the advertising community, are unable to perform as well as younger persons, and, therefore, should be disposed of when they reach the age of Hayes, for no reason, other than their age.

55.     Here, the acts of McCann–Erickson were done so clearly with reckless indifference in the face of a perceived risk that its actions would violate Hayes' protected rights under the New York City Human Rights Law, that, in addition to all the damages inflicted upon Hayes and in addition to all the measure of relief to which Hayes may properly be entitled herein, McCann–Erickson should also be required to pay punitive damages as punishment for its discriminatory conduct in order to deter McCann–Erickson and others similarly situated from engaging in such conduct in the future.

14

## AS AND FOR THE CAUSE OF ACTION ON BEHALF OF HAYES AGAINST MCCANN–ERICKSON FOR AGE DISCRIMINATION IN VIOLATION OF CHAPTER I, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

56.    Hayes repeats, re-alleges and incorporates each and every allegation contained in paragraphs 1 through 55 of this Complaint, as though fully set forth at length herein.

57.    The acts which constitute and form this cause of action were perpetrated upon Hayes while he was in the course of his employment with McCann–Erickson and while he was protected under the New York City Human Rights Law because of his 53 years of age.

58.    Up to the time of the wrongful, unlawful, and discriminatory termination alleged herein, which was an adverse employment action, Hayes was fully qualified for his position and performed his duties in that position, in a satisfactory fashion and was in a position to continue doing so for the remainder of his career.

59.    Given the circumstances surrounding Hayes' termination, as set forth in paragraph 50, including but not limited to the fact that, among other things, older employees were terminated from McCann–Erickson, while many younger employees were hired or promoted, that the President of Universal McCann demonstrated a clear discriminatory animus towards persons of age, and the falsity of the pretext asserted by McCann–Erickson, one can reasonably conclude that Hayes was terminated under circumstances giving rise to a strong inference of age discrimination.

15

60.    McCann–Erickson condoned discriminatory behavior on the part of McCann–Erickson's senior officers, systematically terminating older employees while favoring younger employees, and McCann–Erickson failed to take any genuine, effective or appropriate remedial action to guard against such conduct.

61.    The facts contained herein constitute unlawful discrimination against Hayes by McCann–Erickson, based on Hayes' age, in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a)("New York City Human Rights Law"), which, inter alia, states that:

> "It shall be unlawful discriminatory practice... [f]or an employer or an employee or agent thereof, because of the actual or perceived age... of any person... to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

62.    As a direct and proximate result of McCann–Erickson's violation of the New York City Human Rights Law, McCann–Erickson is liable to Hayes pursuant to §8-502(a) of said statute for "damages including punitive damages," and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," based on the lodestar method, as has been judicially established and accepted as a means of calculating attorney's fees, when they are properly available under the law, as they are here, and for pre-judgment interest.

63.    In addition to being adversely affected in his employment and suffering a significant loss of income and benefits, Hayes has been irreparably personally and professionally humiliated, demeaned and degraded, all of which has been caused by McCann–Erickson's

16

outrageous conduct due to discrimination based on Hayes' age, in violation of Hayes' human rights.

64.    As a direct and proximate result of McCann–Erickson's conduct complained of herein, and as alleged in this cause of action, as well as the conduct set forth in this Complaint, Hayes has suffered damages, injuries and losses, both actual and prospective, which include the irreparable loss of income for the remainder of his working career, damage to his career and the emotional pain and suffering Hayes has been caused to suffer, all of which Hayes alleges to be in the amount of Ten Million ($10,000,000) Dollars.

65.    The acts of McCann–Erickson were committed with reckless indifference, in the face of a perceived risk that its actions would violate Hayes' protected rights under the New York City Human Rights Law, so that, in addition to the damages inflicted upon Hayes and in addition to all the other measures of relief to which Hayes may be properly entitled herein, McCann–Erickson should also be required to pay punitive damages for its discriminatory conduct in the further and additional amount of Twenty Million ($20,000,000) Dollars, in order to deter McCann–Erickson and others similarly situated from engaging in such conduct in the future.

66.    Hayes, therefore, seeks compensatory damages, including, among other things, for the emotional harm inflicted upon him, in the sum of Ten Million ($10,000,000) dollars, and the additional and further sum of Twenty Million ($20,000,000) Dollars for punitive damages, making a total of Thirty Million ($30,000,000) Dollars, plus the costs of this action, as well as

17

reasonable attorney's fees on this cause of action based on the lodestar method as has been judicially defined and accepted under actions such as that which exists here, and for pre-judgement interest.

**WHEREFORE,** Hayes demands judgment against McCann–Erickson in the sum of Ten Million ($10,000,000) Dollars in compensatory damages and the further and additional sum of Twenty Million ($20,000,000) Dollars in punitive damages, for a total of Thirty Million ($30,000,000) Dollars, plus reasonable attorney's fees as is permitted under the law, the costs of this action, pre-judgment interest and for such other relief as this Court deems just and proper.

SCHWARTZ & PERRY, LLP
*Attorneys for Plaintiff*

By: _____
MURRAY SCHWARTZ
295 Madison Avenue
New York, New York 10017
(212) 889-6565

18